# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | | |
|---|---|---|
| TIFFANY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | |
| v. | ) | 1:24-cv-00192 |
| | ) | |
| EAGLE PARTS & PRODUCTS, INC., | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Plaintiff Tiffany Jackson hereby files this Complaint against Defendant Eagle Parts & Products ("Eagle" or the "Company") for damages and other relief for violations of Title VII of the Civil Rights Act of 1964.

## JURISDICTION AND VENUE

**1.**

This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

**2.**

Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391 because Defendant resides in this District.

## ADMINISTRATIVE PREREQUISITES

3.

Plaintiff has exhausted all administrative requirements necessary to bring her claims. Plaintiff filed an EEOC charge based on her claims under Title VII within 180 days of the Title VII-violative conduct at issue. The EEOC issued its Notice of Right to Sue on July 29, 2024.

4.

This action is timely filed with respect to Plaintiff's Title VII claims as fewer than 90 days have passed since Plaintiff's receipt of the Notice of Right to Sue for the same.

## THE PARTIES

5.

Defendant is a domestic for-profit organization that holds itself out as a dealership for golf carts and other vehicles. It also provides repair and parts retailing services for these vehicles.

6.

Plaintiff is a former employee of Defendant, having worked for it as a welder from about February 2023 until her termination in June 2023.

## STATEMENT OF FACTS

7.

Ms. Jackson began working for Defendant in February 2023 as a plastics specialist, but soon transitioned to be a welder, where she performed

maintenance and repair work on golf carts and other vehicles.

8.

Ms. Jackson's direct supervisor was a man named Rodney, who oversaw the welding operation.

9.

Ms. Jackson also worked alongside another welder named Anthony Burroughs.  Almost as soon as she began working in welding, Mr. Burroughs took an interest in Ms. Jackson.  His expression of that interest began with things like him taking time away from his work to converse with Ms. Jackson, following her around the worksite, and remarking that she looked attractive but quickly escalated.

10.

Despite displaying no interest in his advances, Mr. Burroughs began contacting Ms. Jackson outside of work hours through her personal social media accounts.

11.

Eventually, Rodney informed Ms. Jackson that Mr. Burroughs, whom Rodney rode to work with every day, had an obsession with her.  Rodney expressed that it was in her best interest for Ms. Jackson to block Mr. Burroughs on all social media and begin ignoring him.

**12.**

Meanwhile, Mr. Burroughs' obsessive behavior towards Ms. Jackson continued. Not only did he continue to follow her around the worksite and stare at her throughout the workday, he also began stalking her online and spread rumors at the worksite that he and Ms. Jackson were romantically involved, which was untrue.

**13.**

After a while, Rodney stated that he was concerned for Ms. Jackson's safety and partitioned off Ms. Jackson's work area, ostensibly to shield her from Mr. Burrough's harassment. Even still, Mr. Burroughs would stalk about her work area trying to see her. On multiple occasions, Ms. Jackson caught him looking at her through the cracks in the partition.

**14.**

Around this time, Rodney informed Eagle's human resources department of Ms. Burrough's behavior, though it did nothing to remedy it.

**15.**

Ms. Jackson also blocked Mr. Burroughs on all of his social media accounts.

**16.**

Upon learning of this, Mr. Burroughs confronted Ms. Jackson and began interrogating her as to why she had blocked him. Ms. Jackson told him

emphatically that she did not want him around her or talking to her if it was not necessary for work.

**17.**

Ms. Jackson was so frightened of Mr. Burroughs that she would have others retrieve parts from him if she needed them and would wait until he left in order to clock out to avoid potentially having to be alone with him.

**18.**

Sometime after May 1, 2023, Rodney, who was married, also began making lurid sexual comments to Ms. Jackson. He told her that other men on the site had asked him how he worked with Ms. Jackson when she is so "sexy," whether it was hard working next to her, and whether he had tried to sleep with her.

**19.**

Rodney soon escalated his commentary, telling Ms. Jackson how "sexy" he thought she was and that she needed an older man like himself rather than a young man.

**20.**

Ms. Jackson began to suspect that Rodney's apparent attempts to limit her exposure to Mr. Burroughs were really motivated by his desire to keep her away from other men at the site.

**21.**

In early June 2023, Rodney approached Ms. Jackson and told her about a conversation that he had with another welder named Nick. Rodney told her that Nick had told him that he needed to stop doing nice things for her because "[she] was not going to give him any pussy." Rodney also reported that Nick had said that his friend had been "fucking" her and that pursuing her was a waste of time because she was a "player."

**22.**

Ms. Jackson went immediately to report this interaction to human resources but found they were not yet in the office. Instead, she encountered yet another male employee named Travis who told her that Rodney had warned him to stay away from Ms. Jackson because she was not going to sleep with him.

**23.**

Having had enough of what she by that time discovered was a seeming network of coworkers who had been vying with one another to sleep with her and all of the harassment, distress and disruption that that entailed, Ms. Jackson reported the entire saga to human resources that same day once they arrived.

**24.**

Amazingly, human resources elected not to intervene and instead told

Ms. Jackson to personally confront the men who had been harassing her and tell them to stop.

**25.**

Having no other options, Ms. Jackson set out to follow human resources' instructions and confronted Rodney and Nick. She told them that she had gone to human resources and begged to be left alone so that she could perform her job.

**26.**

As she started to walk away, Nick grabbed her arm to restrain her from leaving. Meanwhile, Nick and Rodney continued to argue with one another.

**27.**

Just three workdays later, Rodney fired Ms. Jackson. As she began to collect her things, Rodney warned her not to leave because the Company was "calling the dogs on [her]."

**COUNT I**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**DISCRIMINATION- HOSTILE WORK ENVIRONMENT**

**28.**

Plaintiff incorporates paragraphs 1-27 by reference as if fully set forth herein.

**29.**

As a woman, Plaintiff is a member of a recognized protected class for

7

purposes of Title VII.

**30.**

Plaintiff was subjected to unwelcome sexual harassment and retaliatory harassment by multiple of her coworkers.

**31.**

The harassment that Plaintiff suffered at the hands of these individuals was so severe and pervasive as to create a hostile working environment.

**32.**

Defendant was on notice, both through its knowledge of the tendencies of the offending employees, the reports of other employees, and through direct reports by Plaintiff herself that she was suffering such harassment, and it failed to take appropriate corrective action to prevent it and stop it.

**33.**

Even after Defendant's human resources department had notice of Plaintiff's harassment it not only failed to take measures to stop it, it told her that she was responsible for confronting her harassers.

**34.**

Even if Defendant did not have notice of all of the harassment that Plaintiff suffered, which it did, it reasonably should have been on notice of it.

**35.**

Plaintiff has suffered severe emotional distress as a result of Defendant's

actions.

**36.**

Plaintiff is entitled to all damages permitted by law under this count, including but not limited to, compensatory damages, emotional distress damages, punitive damages, and attorneys' fees and costs.

**COUNT II**
**VIOLATIONS OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**RETALIATION**

**37.**

Plaintiff incorporates by reference Paragraphs 1-36 as if fully set forth herein.

**38.**

Plaintiff engaged in Title VII protected activity, including communicating with coworkers regarding workplace harassment and complaining on numerous occasions about the harassment that she suffered both to human resources and her supervisors, which included some of the harassers.

**39.**

Defendant took adverse actions against Plaintiff by terminating her employment through its agent Rodney mere days after she told him to stop his harassment and that she had reported his behavior to human resources.

**40.**

Defendant's termination of her was because of her complaints of sexual harassment.

**41.**

Plaintiff is entitled to all damages permitted by law under this count, including but not limited to, compensatory and punitive damages, back pay, front pay, and attorneys' fees and costs.

**WHEREFORE** Plaintiff respectfully requests judgment in her favor on each count in this Complaint and demands:

1. A Jury Trial;

2. Judgment in Plaintiff's favor and against Defendant under all claims in this Complaint;

3. An order to Defendant to make whole Plaintiff by providing her with out-of-pocket losses as well as back pay in an amount equal to the sum of wages, salary, employment benefits and other compensation denied or lost as a result of Defendant's unlawful acts, together with interest thereon, all in an amount to be proven at trial;

4. Statutory damages and penalties under Title VII;

5. An Order granting Plaintiff her reasonable attorney's fees and all other fees and costs associated with this action;

6. Declarative and injunctive relief appropriate to remedy the Title VII violations;

7. Prejudgment interest; and

8. Such other and further relief as is just and proper.

This 23rd day of October 2024.

                                            */s/ S. Graham White*

James M. McCabe
Georgia Bar No. 724618
jim@mccabe-lawfirm.com
S. Graham White
Georgia Bar No. 535538
graham@mccabe-lawfirm.com

The McCabe Law Firm, LLC
3355 Lenox Road
Suite 750
Atlanta, GA 30326
Office: (404) 250-3233
Fax: (404) 400-1724

Attorney for Plaintiff Tiffany Jackson